Geophysical AS v. Iancu Geophysical AS v. Western Keiko, 2017-15-82. First, we want to acknowledge the appreciation of comments from the parties. We may well and will likely perhaps ask for further comments on SAS, its effect on this case. But for now, let's direct our arguments to the merits. Ms. Bernicke. Thank you, Your Honors. May it please the Court, Jessamyn Bernicke for Petroleum Geoservices. The PTAB erred in construing the organizing step of the patent inconsistent with the clear, plain language of the entire claim term, inconsistently with the specification, and with the purpose of the invention. I'd like to turn first to the entire claim language. The claim language of that particular step is organizing the coordinate-designated set of traces into a set of bins with regularized number of traces. And I want to focus specifically on the language set of traces, because that word set has to mean something. And the way the PTAB construed the term, it encompasses simply ignoring the vast majority of the traces. But the language doesn't say organizing some of the traces into bins. It doesn't say organizing eight or just generally traces into bins. It says organizing the set of traces into a set of bins. And so when the PTAB construed that to mean ignoring, i.e., decimating or discarding the vast majority of the traces. Why is it that part of organizing? If you're going to get together a bunch of components and you're going to organize them, doesn't it make sense that an interpretation of organizing would mean to say, well, this one really doesn't belong here. You get rid of it. So I think that if you think of the term organizing in isolation, you may be steered that way, although the plain language, the plain definition of organizing that the Patent Office cited still doesn't expressly talk about discarding. But the question here is not the word organizing by itself. The words are organizing the coordinate designated set of traces. And that set of traces was identified in the earlier step. The assigning step identifies and, quote, defines the set of traces. So the language says that you have to organize that set of traces into bins. It doesn't say throwing them away or putting them elsewhere. And this isn't a situation where just a few traces disappeared. The vast majority of the traces in Gallagher are discarded or ignored. And as the board held on A36, they said what happens in Gallagher is that the traces are already in the bins at the end of the assigning step. They said the assigning step both creates the bins in Gallagher and assigns the traces. So they said the organizing step merely involves ignoring some of the traces. And ignoring is not organizing them into bins. To go back to the closet example that was in our brief, if there's a pile of clothes on the floor and you look at your child and you say, please organize the pile of clothes into the drawers and you come back and 90% of the clothes are still on the floor and 10% are in drawers, you wouldn't say, oh, you're done with the job. You'd say you still have to finish organizing the pile of clothes into the drawers. So first of all, the plain claim language requires conclusion that the patent offices and the board's construction was erroneous. But in addition, you have to look to the specification. And this is another place where the board erred. Because there's no dispute that the only examples in the specification of the patent do not discard or ignore any traces whatsoever. The patent office doesn't contend with that fact. Under BRI, you still have to have a construction that's consistent and not divorced from the specification. As this court has found repeatedly in the Microsoft v. Proxicon case cited in our briefs and in the In re. Smith case cited in our briefs, the correct interpretation has to correspond with what's described in the specification and how the inventor describes their invention. And that is directly at odds with the construction that was here. In both of those cases, what this court did was you reviewed the lower court's decision and you said, what happened here is that in the specification, there was really only one way it was described. And because it was only described that way, a BRI that is vastly broader than that is incorrect. Here, with respect to the whole point of the invention, the testimony from Dr. Lynn, which is undisputed, this is A. 1739 through 1745, he talks about the point of this invention was to enable a sub-bin by sub-bin analysis. Now, the Gallagher reference has nothing to do with analyzing anything at the sub-bin level. Can I ask a technical question? I'm not certain I understood from the specification how the patent performs the organizing step, organizing the coordinate designated set of traces into the bins. How does it do it? Certainly. So to go back for a minute to the assigning step, just to give it some context, the very first thing that happens is that the traces are collected. They are then assigned coordinates, and that's where you see that spider diagram. Just let me stop you there. In that step, are any of the traces discarded? No. Are all the traces employed? All the traces are employed in the assigning step. They are all assigned coordinates. The coordinates that you've seen are, for example, in the Cartesian plot in Figure 6. It's given that line that reflects the distance and also the angle of the trace. And so they're all assigned those coordinates. And you just put them on a coordinate grid. The grid is what's happening in the organizing step. So what's happening, and part of the brilliance of Starr's invention, was to recognize that when you first assign the traces with that sort of assignment system, you can then overlay a grid, and there's a decision that goes into that, which sort of grid you're using, how big the boxes are. But when you overlay that grid, that's you placing the traces, organizing the traces into bins. But you have to sub-bin at the organizing step, right? Exactly. Right. And so Gallagher is distinct from that in the sense... And in the patent, there you are, and you're not discarding or ignoring any of the traces. None of them. And it would be counter to the purpose of the invention. Because what Starr says... The assigning step, you're doing this in order to define the coordinate-designated set of traces. It defines. The assigning step defines the traces that are not... It defines that spider graph that we're talking about. Yeah, it defines the collection of traces that you've given coordinates to, that you then have to organize into the bins. And so the assigning step, and I think that word defining is very important, because it defines the set. It said, okay, this is my universe of traces that I have organized with coordinates. And then the organizing step refers back to that. There's no question about the antecedent basis in the organizing step. It refers back to that set, and it said, now I'm going to organize those traces, that set, into bins. It doesn't ever say, well, you can just take out little pieces of it, which is what Gallagher does. And to go back to Your Honor's question, Judge Clevenger, what Gallagher does... The traces don't meet that definition that was created in the assigning step. Traces, as they're collected, will all have the information regarding distance and azimuth. So I don't think that really materializes it as an option. Why the defining step? Why do you have to define the traces? I think the point of the assigning step is simply to correlate the trace with its offset in azimuth, and basically place them on that spider plot, for lack of a better term, that shows you, okay, now I've selected this form of coordinate set, because you could do a Cartesian set, a polar set, or some other sort of coordinate. And so I think the purpose of the word define in that claim term is helpful, but helps you explain that now you've kind of identified a body of traces, and those are the traces that you are going to go ahead and organize. The question for us on this point, to cut to the chase, is whether or not organizing can be satisfied by decimating or discarding. Right, or ignoring is another way they put it. That's right. Absolutely, absolutely. And you've got two other arguments you're raising, right? Sure, I do. If I can make one last point on this, however, which is that discarding data and ignoring data is entirely contrary to the purpose of Starr's invention. In the specification, it's clear that the goal here is to do a sub-bin by sub-bin analysis, which is very different from the prior art. Gallagher doesn't do any sort of per-sub-bin analysis. So the specification repeatedly talks about this AVO analysis. And so as Dr. Lin testified at A1802 and A1733-34, discarding data is exactly the opposite of the point. The point, as it describes in the specification, is to increase... But you're basically arguing that the inventor here has given a special meaning to organizing in the context of this patent. Organizing doesn't have the common meaning that we would get from a dictionary. I don't think you have to go as far as that. I don't think you have to find that he was his own lexicographer. Because, first of all, the BRI law says that as a practical matter, you have to look at the spec either way. But putting that aside, it's really the full claim term that you have to look at. And so pulling out a dictionary, which, by the way, the PTAB didn't rely on that dictionary in its construction. But pulling out a dictionary for just the word organizing loses the benefit of the words the set of traces organized in two bins, which are key text to the limitation. But turning to Claim 2, which is one of the other appeal points, the PTAB also erred in connection with its construction of Claim 2, which you may remember was something they did after rehearing. So they originally had construction that was consistent with PGS's position, and then they flipped over a dissent on rehearing. Now, the Claim 2 issue, in some ways, only materializes as a result of the erroneous construction of organizing. Because under the right construction of organizing, you don't have a situation where the number of traces per sub-bin changes over time. If you don't permit decimating or ignoring traces, there's only ever one number of traces per sub-bin. But if you wrongly accept the construction of organizing that the PTAB found, that presents this question. Is Claim 2 referring to the traces before the decimation or after? The majority opinion on the second time around, with the dissent coming off of the original decision, the majority assigns Claim 2 into the assigning step, correct? Correct. Right. Is it your argument that the correct way to do it is to assign Claim 2 to both steps? No. And that both steps have to be met? No. Our argument is that the term the coordinate designated set of traces has one antecedent basis by its plain language, and you have to pick one. And the only one you can pick is post-organization. And that's because the examples in the specification tell you exactly how to interpret these claims. And they tell you they use the exact same language as Claim 2, and they say that's a post-organization situation. And under the Thought v. Oracle case that we cited, it's too— Doesn't the specification serve to override the general rule that the judge could pick whichever one of the two steps in Claim 1 it wanted to assign Claim 2 to? I'm not sure that I agree that there's a general rule that kind of gives the judge that discretion. I think as a matter of— There's no temporal limitations. Well, what the PTAB actually said was there's no temporal limitation apart from the fact that there's an antecedent basis in the assigning step. So it's kind of a little circular to say there's no temporal limitation, but then essentially include one. But I will— Counsel, you're well into your rebuttal time, and you did have a third issue. Do you want to address that briefly? I will not address that, but one final point on the Claim 2 issue, which is that I noticed that the Patent Office takes a different position from what the PTAB did. And they take the position that the Claim 2 actually refers to either or both of the pre-organization or post-organization,  what the PTAB actually did here. Thank you, Your Honors. Mr. Krauss. If it pleases the Court, let me just start with the assigning step because I think there might have been a misimpression left by opposing counsel's discussion of that. When I read the claim language here, the number of traces that can end up in the various bins can very well be a subset of the initial fold. In other words, in some respects, that's the only way this can work out. If you look at the specification, it does not explain, as you suggested, Judge Clevenger, how the organization actually takes place.  It's because the geometry was perfect to begin with. You have a different geometry. The claim allows you to select a subset of the traces that would give you a regularized set of traces in the sub-bin. So I think that assigning is an important component. At the assigning step and the gathering step, there are two steps here where you can actually get a subset of the initial survey results. The gathering step says, gathering from the data a plurality of traces. In other words, in that claim, you're not using all the traces. The next step is assigning a coordinate set to a plurality of traces in the common reference point bin. So again, you're not necessarily assigning the coordinate step to all of the traces in the bin. The gathering is just collecting the traces, right? Well, it says gathering from the data. The data is presumably the entire data set of traces, and gathering from that data could well be a subset. It just says a plurality. It could be just picking two traces out of the entire survey of thousands of traces. So the claim language, I think, refutes what opposing counsel just said about the necessary assignment step. It could well be that the specification used all the data in that very stylized example that it used, but that was just dumb luck, and Gallagher could have had that as well. If Gallagher had a pre-existing perfect geometry, it could have ended up very well with one trace per bin with no need to discard or designate. In the context of claim language in the organizing limitation as well as in the context of the specification, why can organizing be read to include decimating or discarding? Organizing, as the board found, is a very broad term. I understand. The way I phrased my question, in essence, put aside the common meaning. It said in the light of the claim language. Right, and as opposing counsel said, you can look at it... For example, if the claim language said not decimating, we would know what you mean, but your adversary's argument here is that organizing the traces into a step of bins tells us something about what organizing means and what it doesn't mean. Yes, it does, but again... And then they direct us to the specification. But again, the specification doesn't explain how you would organize any set of data except for the one that they had in front of them, in which case, using that coordinate set, it turned out that every single trace fell into a bin. And so there's no explanation of how you would do it with any kind of an irregularly formed survey. I don't think it's possible. Technically, is it possible in the patent, given the specification, to organize literally onto the step and in the process discard or overlook some traces? In the specification? The spec doesn't tell us exactly how they were organized, right? I think that's correct. And isn't it possible in science to perform the step of organizing and throw out some of the traces, to ignore them? I think that's certainly possible. The spec... I'm not sure if you're helping me. I'm trying to understand from the way in which the art works. They go out and they shoot the traces and whatnot, and then they put them on the XY grid. And from the XY grid, they pick a few more out, and they're trying to reduce down to a subset of traces, right? That's my understanding. Gallagher, as well as my understanding of how STAR works, except in the special case where you have a perfect geometry. And there, the organizing step appears later in the claim. The assigning step and the gathering step essentially perform the function of discarding whatever traces are not going to give you the regularized set of traces in the bins. Am I answering your question? Well, so when I asked Ms. Berniker, are all of the traces, I mean, assuming that you may have thrown a few out of the gathering step to put into a plurality, but once you get past your plurality of traces in the gathering step, she asserted to me that the invention never discards or ignores any trace. All of them are accounted for. Yeah, I understood her to say that you don't even discard any in the gathering or assigning steps, which I think is probably incorrect in most cases. No, I meant in the organizing step as well. If I wasn't clear to her, she can respond when she gets back up. Right, but perhaps if you have created a data set that's perfect such that it can now be organized, such that you'll get a regularized set of traces per bin, then that step of organization would not involve any discarding. The same could be said of Gallagher. If Gallagher started with a perfect geometry or at the assigning step only selected a subset that would result in a regularized set of traces, then you'd get to the same result without any discarding in the organization step. So how do we count on the Claim 2 issue? How do we account for what happened to the board? We originally had a unanimous opinion favorable to the patentee, and then we have on a reconsideration a change of view. What was wrong with the original view of the board? The majority of the board, on further contemplation, decided that they had got it wrong in the first part, and I think it's pretty clear. If you just look at Claim 2, all it really does is add a where-in step. It doesn't say anything about where that would occur, and I'm looking at Claim 2. I assume you've got it as well. A process as in Claim 1 wherein a plurality of the designated set of traces have the same coordinates, and if you go back to where the coordinate designated set of traces is created, that's before the so-called organizing step, and yes, in Gallagher, you look at those shells, they've got more than one. In Gallagher, it clearly has a plurality at that step. They get rid of it at the organizing step. Correct. Right, so you have a process as in Claim 1, and then you have a where-in, so you're going to take the where-in and if you rewrote the claims, right? If you rewrote this claim entirely, wouldn't you attach a plurality of the coordinate designated set of traces to both the assigning and the organizing step? Assuming we rewrote the patent so everybody would really understand what Claim 2 is. It's a dependent claim. It incorporates every limitation of Claim 1, right? That's correct. So wouldn't you stick the language, a plurality of the coordinate designated set of traces onto both the assigning and the organizing steps since both of them talk about the coordinate set of plurality? I think it would be sufficient if there was a plurality in simply the assigning step. I understand what you're talking about. So I'm just talking about a simple-minded person who's looking at a dependent claim and trying to understand what it covers. Right. The dependent claim, since the words, the coordinate designated set of traces, right, exists in both the assigning clause and in the organizing clause, correct? That's correct. So why wouldn't you attach the language from Claim 2 both to the assigning step and to the organizing step as a matter of claim construction? I think it's fair and reasonable and certainly out of the broadest... If you take the patent out into the real world and you begin to assert it against people, right? That's the danger, is that... No, but, I mean, isn't the danger that you would need to take Claim 2 and hive all of Claim 1 onto Claim 2? I don't think so. I mean, I would say a much clearer way of writing Claim 2 would have been to say a process as... There might have been a clearer way to write it. We're stuck with what we've got here. I'm just saying the fact that they didn't choose the clearest possible way when they could have suggests that they may have been looking for broader coverage and that the claim may, in fact, cover more. They could have simply said where in after all the steps of Claim 1 are completed there remain a plurality of traces in the bin. And, of course, we also have our backup argument. Well, what struck me as odd is that what's happening is here that this board is split. They have one board the first time around decided to assign Claim 2 to the organizing step in which case there was no anticipation. And then they have a change of mind and two people say, no, I'll assign it to the assigning step in which case it's the other way around. And so I'm saying to myself, is this arbitrary or capricious what's happening? Who's getting the right to decide which of the two limitations assigning or organizing Claim 2 gets assigned to? What rule of claim construction or what rule said that you've got to choose which one of assigning or organizing you would assign Claim 2 to? I guess I'm not aware of any rule of claim construction which completely deprives you of that choice. I think if there's no temporal limitation on a claim and where you've got a where in clause referring to an element that occurs at one point in the claim, if that element, if that where in clause can be. The reason I'm asking is in order to anticipate you have to meet every limitation of a claim, every single one of them, right? I understand. And so to anticipate Claim 2, you have to meet both assigning and organizing step. To anticipate Claim 2, you have to anticipate in assigning and organizing. That's correct. Because otherwise you don't anticipate. And in this case, it's clear that Gallagher does not anticipate claim organizing the second step. I'm just maybe, I haven't, maybe 24 years as a patent judge hadn't been enough to teach me special rules in patent, but I'm just asking you as a history major just reading this claim. It can't be infringed unless both those steps are met, right? I guess as somebody who's studied English fairly closely, I'm not sure why that is, especially under the broadest reasonable interpretation and the fact that there's no temporal limitation in here. It's a where in clause which refers to the coordinate designated set. Which has occurred twice in Claim 1. Right. And the first time, there's no question that. The first time, there's no question there's anticipation. The second one, there's no question there's not. We may agree to disagree on that, but then we also have the backup argument. Gallagher. Why don't you move on to your further argument? Excuse me? Move on to your further argument. I mean, I would just say, and the board didn't hold this, but the petitioner made a good argument, and we made it as well in our brief, that Gallagher itself does not exclude the possibility of two traces appearing in a bin after the organization step. Gallagher merely says that one trace is preferable. And that's discussed in our brief. And opposing counsel didn't say anything about the Fraser combination, but I think it's very clear that a common reference point encompasses both a common midpoint and a common reflection point. And if you have an uneven surface with a dipping problem, it doesn't make sense to use the common midpoint, so it would make perfect sense for somebody to modify the Gallagher reference to account for the physical reality of the dipping reflector. You've now given her something to rebut. I welcome that. Thank you. Sorry if I misdirected your argument by pushing you on the other issue. If you have any more questions, I still have a minute and 51 seconds left. Thank you, Your Honor. Ms. Bernicke has some rebuttal time, three minutes. Thank you, Your Honors. It is true that at the gathering step you certainly don't have to gather all the traces, and you don't have to in the first instance assign coordinates to all the traces, although the evidence that's undisputed is that it's really expensive  That said, what you ultimately assign coordinates to, which is the output of the assigning step, that data needs to all be organized into bins, and that's where the argument breaks down for the Patent Office, because what happens in Gallagher is the full body of traces are assigned coordinates, and in fact they're already in bins even before the organizing step, and so the only thing that's left is ignoring large amounts of data. Now, one thing, and I should add, that whether or not you can ignore some of the data in the first step, the gathering step, or even at the beginning of the assigning step, doesn't help them in any way because they still have to do something to satisfy the organizing step. So if ignoring is happening at the front end, ignoring doesn't qualify as organizing. It is not, however, a matter of dumb luck that Starr had these perfectly organized bins. That's the key to the invention. The key of his invention was that he recognized that if you were able to assign coordinates in this fashion to data that previously had been wildly irregular, if you created these spider diagrams and overlaid them into these organized bins, you wouldn't have to change the survey geometry or discard data. And so the idea that it's just an accident that what happens in Figure 6 evenly falls in the bins and nothing's discarded is, frankly, inconsistent with the invention. It is the invention to recognize that you can do it this way and then perform sub-bin by sub-bin analysis. I should add, regarding organizing, that on page 20 of their brief, the PTO tries to cite case law suggesting that discarding can be an additional step, but it has to be, something has to satisfy the organizing step. Now, I would urge you to recognize that the Patent Office hasn't pointed to anything showing that in the Starr patent any traces are discarded, ever. So I understand their argument. They think it's conceptually possible, but the specification doesn't support the conclusion that Starr is teaching you to discard data. The conclusion is you put them all into the bins. With respect to Claim 2, I want to reiterate that the Patent Office's position is not to defend what the Board did. The Patent Office's position is now that Claim 2 optionally refers to either the assigning step or the post-organization. That's not a principle of claim construction, as you noted. It has to either, as Judge Clevenger mentioned, refer to necessarily both of them, or you have to pick one, and obviously the PTAB first came out with the organizing step, which is the only one that's consistent with the specification, because Column 366-47 tracks this language identically and tells you the relationship between Claims 2, 3, and 4, all being post-organization. I will refer you to our briefs in responding to the other arguments that were raised in the opposition. Thank you, Your Honors. Thank you, Counsel. In this court, organizing includes terminating the argument. We'll take this one under submission.